Michael SCHERTZ and Beverly
Schertz, Plaintiffs–Appellants,

v.

WAUPACA COUNTY, et al.,
Defendants–Appellees.

No. 88–1738.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1988.

Decided April 21, 1989.

Alvin R. Ugent, Milwaukee, Wis., for plaintiffs-appellants.

David T. Flanagan, Office of Atty. Gen., Madison, Wis., Philip C. Reid, Cook & Franke, S.C., Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Plaintiff Michael Schertz appeals from the entry of summary judgment in favor of the defendants, Waupaca County and several state and local law enforcement officials, in this suit brought under 42 U.S.C. Section 1983. Schertz alleged that he was arrested and detained and his property searched, all without probable cause.

I.

At about 4:45 a.m. on July 14, 1985, Iola, Wisconsin police officer Gerald Mork was found dead in a Waupaca County cemetery. Mork had been shot twice in the back of the head.

Upon learning of the murder, Robert Andraschko, Chief Deputy of the Waupaca County Sheriff's Department, requested assistance from the Wisconsin Department of Justice. Andraschko headed the investigation in place of County Sheriff William Mork, who did not participate because the murder victim was his son. The same day that Andraschko requested state aid, the sheriff's department and state crime laboratory conducted an investigation of the crime scene. Soon after, the Wisconsin Department of Justice assigned special agents Louis Tomaselli and Carl Paetzke to the investigation.

The investigation revealed evidence inculpating Schertz, the Iola Chief of Police. On July 24, agents Tomaselli and Paetzke searched Schertz's home with his consent and in the presence of his attorney. The agents took Schertz into custody on charges of theft of a firearm and misconduct in office. He was accused of seizing handguns from two Iola citizens and not returning them, and of exceeding his lawful authority by taking the guns from the custody of the police department. On August 3, after a hearing, a Waupaca County judge determined that there was probable cause to search Schertz's land and buildings. The state agents, along with Andraschko and Officers Berglund and Kussman, conducted this search.

From August 3 to August 22, a John Doe proceeding, fully complying with Wis.Stat. Section 968.28, was conducted to investigate the murder. Eleven witnesses, including Schertz, testified over the course of five days. The judge determined that there was probable cause to believe that Schertz had murdered Mork. Accordingly, he issued a warrant for Schertz's arrest for first degree murder. The same judge, presiding over a preliminary hearing at which fifteen witnesses testified, found probable cause to bind Schertz over for trial. An-

other judge, on Schertz's motion, reviewed the preliminary hearing transcript and reached the same conclusion. A preliminary hearing on the theft and misconduct charges likewise resulted in a determination of probable cause.

Testimony at the John Doe proceeding and preliminary hearing on the murder charge established the following. The bullet fragments and cartridges recovered at the scene were consistent with those fired from a Beretta model 1934 .380 auto pistol caliber, semi-automatic pistol. An Iola resident, Frances Hayden, testified that Schertz had seized such a weapon and two other guns from her tavern, and that the Beretta had not been returned to her. A former Iola police officer testified that he had seen two handguns in the police evidence locker in June 1984, tagged with Hayden's name.

The Iola village president testified that Schertz initially had opposed Mork's hiring and later had requested that he be fired. The police chief of a neighboring town related that Schertz had made threats against Mork.

An Iola resident testified that he was sitting with some friends on a bench on Main Street in Iola at about 4:00 on the morning of the murder when one Iola squad car passed by, heading toward the cemetery. A few minutes later, the other Iola squad car passed by, following the first on the road leading to the cemetery. (The village police force at this time consisted of Chief Schertz and Officer Mork.) About five minutes later, the witness heard what he thought was a gunshot. Soon after, the second squad car returned to Main Street. The witness waved to the driver, whom he recognized as Chief Schertz.

Schertz does not dispute any of the above facts; he does, however, challenge the conduct of the murder investigation. According to Schertz, the defendants pursued only those leads which tended to inculpate him and disregarded or lost exculpatory evidence. Specifically, he alleges the following errors. Investigators marked off the crime scene with tape, but did not seal it off or guard it. A rescue squad car drove over tire tracks at the scene. Certain evidence was not submitted to the state crime lab for processing, including a pool of liquid under Mork's car and blood found on the soles of his shoes, in the backseat of his squad car, and in the surrounding area. No one dusted Mork's gun or the interior of his squad car for fingerprints. The tire tracks at the scene were photographed, but no casts were taken. A person reported having found a .380 cartridge case near the cemetery; Deputy Andraschko told him to throw it away, explaining that it would not be useful to the investigators. A week after the murder, a tent was discovered about a quarter mile from the cemetery, positioned so that a person in it would have a clear view of the crime scene (assuming that the tent was there at the time of the murder). The tent was not photographed or tested for forensic evidence. Finally, a logbook in which Schertz kept records of his activities as police chief was seized and not returned to him until after the murder trial, while he was preparing his defense to the theft and misconduct charges.

Schertz ultimately was acquitted of all the charges against him. He brought suit against Sheriff Mork, Deputy Andraschko, and Officers Kussmann, Jensen, and Berglund of the sheriff's department (collectively, the "Waupaca defendants"), agents Tomaselli and Paetzke (the "state defendants"), and Waupaca County. He pressed several claims in the district court. The court first granted summary judgment to the Waupaca defendants on the claim that they had conducted a constitutionally infirm investigation. In order to allow the plaintiff further discovery, it delayed ruling on the Section 1983 claims based on the arrest. Schertz, however, presented no new facts, instead relying on the argument that the omissions in the investigation invalidated the evidence establishing probable cause. The district court entered summary judgment in favor of the Waupaca defendants on the basis that Schertz had not undermined the determinations that probable cause existed. 683 F.Supp. 1551 (1988).

## II.

On appeal, Schertz presents only his Section 1983 claim that the state and Waupaca defendants arrested and detained him without probable cause, in violation of the Fourth Amendment. He does not contest the sufficiency of the evidence to establish probable cause; rather, his theory is that the flaws in the murder investigation demonstrate the defendants' bad faith and thereby negate the existence of probable cause.

■ The defendants initially contend that the state court findings of probable cause collaterally estop Schertz from relitigating the issue in a Section 1983 action. A federal court applies state collateral estoppel law in determining whether a state court judicial determination precludes relitigation in a Section 1983 claim. *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983); *Guenther v. Holmgreen*, 738 F.2d 879, 883–84 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985). Under Wisconsin law, the collateral estoppel doctrine applies when an issue was actually litigated and decided and its resolution was necessary to the prior disposition. *Reckner v. Reckner*, 105 Wis.2d 425, 314 N.W.2d 159, 165 (App. 1981). Even when a prior determination is entitled to preclusive effect under state law, relitigation is permitted if the earlier proceeding did not fairly or thoroughly address the matter. *Guenther*, 738 F.2d at 883. We agree with the district court that the preliminary hearing determination does not preclude relitigation of the probable cause issue. The preliminary hearing concerned the sufficiency of the evidence to establish probable cause. Since the instant claim is more accurately characterized as a challenge to the integrity of the evidence than to its sufficiency, identity of the issues is lacking. *See Bailey v. Andrews*, 811 F.2d 366, 370 (7th Cir.1987). Accordingly, we turn to analysis of the merits of Schertz's claim.

■ The elements of a Section 1983 claim are 1) the plaintiff held a constitutionally protected right; 2) he was deprived of that right in violation of the Constitu-tion; 3) the defendants intentionally caused the deprivation; and 4) the defendants acted under color of state law. *Donald v. Polk County*, 836 F.2d 376, 379 (7th Cir. 1988). Schertz alleges that his arrest, search, and detention deprived him of the right to be free from unreasonable searches and seizures. Lack of probable cause is an essential element of such a claim. *Guenther*, 738 F.2d at 889.

The defendants, in moving for summary judgment, submitted the transcripts from the John Doe proceeding and preliminary hearing on the murder charge, and from the preliminary hearing on the theft and misconduct charges. Each defendant, in an affidavit, denied wrongdoing. The defendants also submitted affidavits from their attorneys, with attached excerpts from the deposition of Eric Beckman, the plaintiff's expert. Beckman acknowledged that his conclusions about the investigation were based, not on personal knowledge, but on a meeting with Schertz and a review of various documents. Asked to specify exculpatory evidence allegedly lost in the flawed investigation, Beckman admitted that he knew of no specific evidence that was overlooked or disregarded, but could only speculate that, with proper investigation, exculpatory evidence would have come to light.

In response to the defendants' motion for summary judgment, Schertz presented his own affidavit and the affidavit of his attorney, Alvin Ugent, with an attached report by Beckman. Beckman discussed the "sloppy, careless, amateurish" conduct of the Mork murder investigation and opined that the "errors" were actually knowing and intentional, and that "personal motivations may have been behind these proceedings against Mr. Schertz, given the total lack of adherence to professional standards."

The defendants met their initial burden of explaining the basis of their motion and calling the court's attention to the parts of the record which they claimed to demonstrate the absence of any factual issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986). A party opposing summary judgment must demonstrate a genuine issue for trial; that is, the evidence must be such that a reasonable jury could find for the nonmovant. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is proper against a plaintiff who fails to establish an element of his claim on which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ The materials Schertz submitted in response to the summary judgment motion were improperly presented in several respects. Neither Ugent's affidavit, Beckman's report, nor Schertz's affidavit was based upon personal knowledge, as required by Fed.R.Civ.P. 56(e) and Fed.R. Evid. 602. Ugent's and Schertz's affidavits were explicitly based "upon information and belief." Beckman's report failed to demonstrate personal knowledge of the matters attested to and consisted largely of speculation; it was also based in part on what Schertz told him about the investigation. The district court properly declined to consider matters not testified to on personal knowledge of the affiants. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987). Moreover, Beckman's report, attached to Ugent's affidavit, was not sworn testimony, as required by Fed.R.Civ.P. 56. *See Friedel,* 832 F.2d at 970. Schertz's supporting materials contained no more than conclusory allegations that the defendants acted willfully. Such a response is insufficient to withstand a motion for summary judgment. *Davis,* 841 F.2d at 189; *International Union of Operating Engineers v. Associated General Contractors of Illinois,* 845 F.2d 704, 708 (7th Cir.1988); *United States v. Lair,* 854 F.2d 233 (7th Cir.1988).

■ Even if we were to accept Schertz's improperly supported allegations, we nevertheless must find that he failed to raise an issue of material fact with respect to probable cause. Only an issue the resolution of which affects the outcome of the case bars summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *American Jewish Congress v. City of Chicago,* 827 F.2d 120, 123 (7th Cir.1987). Schertz's claim—that the investigating officers harbored malicious motives toward him—does not address an issue material to the disposition of this case. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (materiality is defined by the underlying substantive law). Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Mark v. Furay,* 769 F.2d 1266, 1269 (7th Cir.1985) (citing *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980)). If, however, the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest. *See, e.g., Jones v. City of Chicago,* 856 F.2d 985, 993–94 (7th Cir.1988); *Whitley v. Seibel,* 613 F.2d 682, 686 (7th Cir.1980), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed. 2d 198 (1982). In this case Schertz does not claim that the defendants concealed or misrepresented facts actually known to them; therefore, the existence of probable cause bars plaintiff's Section 1983 claim.

Schertz argues that probable cause is always a jury issue because it involves a question of reasonableness. *See Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir. 1987). While Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment, this is true only where there is room for a difference of opinion. *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985). Schertz has presented nothing to undermine the state court's determination of probable cause.

■ In any event, even if Schertz had raised a factual issue with respect to probable cause, the defendants would be entitled to summary judgment on the basis of qualified immunity. *See id.* at 1569 (immunity a question of law appropriate for resolution on summary judgment). Officials perform-

ing discretionary functions are entitled to qualified immunity from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed. 2d 396 (1982). In order to be deemed "clearly established," the right must be specifically defined:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.... In light of preexisting law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Rakovich v. Wade,* 850 F.2d 1180, 1208–09 (7th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988); *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987). It is not sufficient to allege the violation of a broad constitutional right, such as the right to be free from unreasonable seizures; "if the test ... were to be applied at this level of generality, it would bear no relationship to ... 'objective legal reasonableness'." *Anderson,* 107 S.Ct. at 3039. Rather, the plaintiff must demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights. *Id.; Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987).

Schertz's claims lack a connection to any "clearly established" law which the officials could have violated. Police officers are entitled to immunity if a reasonable officer, in applying for a warrant, could have believed that there was probable cause to support the application. *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986). Allegations of malice are insufficient to overcome the immunity defense; the question is whether the officers acted in an objectively reasonable manner. *Anderson,* 107 S.Ct. at 3040; *Harlow,* 457 U.S. at 815–20, 102 S.Ct. at 2736–39; *Green,* 826 F.2d at 651. Schertz has not challenged the sufficiency of the evidence to establish probable cause; *see Reardon,* 811 F.2d at 1028; nor, despite generalized accusations, has he offered any proof to undermine the integrity of the evidence. *See Bailey,* 811 F.2d at 370; *Whitley,* 613 F.2d at 682. Schertz identifies no case predating the murder investigation which would put the defendants on notice that their conduct violated his constitutional rights. *See Azeez v. Fairman,* 795 F.2d 1296, 1301 (7th Cir.1986).

In fact, it appears that once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence. *See Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2694–96, 61 L.Ed.2d 433 (1979) ("Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence"); *BeVier v. Hucal,* 806 F.2d 123, 127 n. 1, 128 (7th Cir.1986); *Kompare v. Stein,* 801 F.2d 883, 890 (7th Cir.1986) ("the law appears to be ... that the police ... have no constitutional duty to keep investigating a crime once they have established probable cause"); *Gramenos v. Jewel Cos., Inc.,* 797 F.2d 432, 439–42 (7th Cir.1986). In view of the foregoing discussion, Schertz has not overcome the defense of qualified immunity, and the defendants were entitled to summary judgment on that basis. *See Klein v. Ryan,* 847 F.2d 368, 374–75 (7th Cir.1988).

■ The defendants have requested that we impose their attorneys' fees upon Schertz as a sanction under Fed.R.App.P. 38. We invoke Rule 38 when an appeal is frivolous and we determine that sanctions are appropriate. *Spiegel v. Continental Illinois National Bank,* 790 F.2d 638, 650–51 (7th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Indianapolis Colts v. Mayor and City Council,* 775 F.2d 177, 184 (7th Cir.1985); *Reid v. United States,* 715 F.2d 1148, 1154–55 (7th Cir. 1983). We decline to impose sanctions upon Schertz or his counsel. This appeal is

not wholly frivolous, *cf. Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir.1987), nor does it appear that Schertz appealed with the intent to harass the defendants. *See Spiegel*, 790 F.2d at 650–51; *Reid*, 715 F.2d at 1155 (court typically looks for some indication of appellant's bad faith).

### III.

The existence of probable cause bars a Section 1983 action based on false arrest or imprisonment, regardless of the motives of the arresting officers. Schertz's arguments do not challenge the sufficency of the evidence or the officers' truthfulness in applying for a warrant, but rather concern the defendants' alleged intent to harm him. Since intent is not a material issue, the defendants were entitled to summary judgment. Even had Schertz raised an issue with respect to probable cause, he has not sufficiently defined the claimed constitutional violation to overcome the defense of qualified immunity. Accordingly, we affirm the decision of the district court.