**Richard A. WOLF, Plaintiff,**

v.

**James NAPIER, Tippecanoe County Indiana Sheriff's (Police) Department, Defendants.**

**Civ. No. L 86–81.**

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

Jan. 8, 1990.

Frank W. Hogan, Indianapolis, Ind., for plaintiff.

James A. Gothard, Lafayette, Ind., for defendants.

### MEMORANDUM OPINION AND ORDER

ALLEN SHARP, Chief Judge.

#### I.

On June 19, 1989, defendants Richard Murphy and the City of Lafayette, Indiana, were dismissed. Thus, the amended complaint remains pending as to the defendant, James Napier, and the Tippecanoe County Indiana Sheriff's Department. (There is a serious question as to whether the suit against Tippecanoe County, Indiana, has been brought in precisely the correct posture in this lawyer-drawn amended complaint. However, because the issue is not directly confronted, this court will assume that Tippecanoe County, Indiana, has appropriately been brought into this case as a defendant). On December 20, 1985, plaintiff's counsel moved to publish the depositions of Richard A. Wolf and Richard L. Murphy. Transcripts of those depositions along with that of the defendant, James Napier, have been examined and considered on this motion for summary judgment.[1] What remains to be decided in this case is a motion for summary judgment filed by the remaining defendants on November 7, 1989, to which the plaintiff responded on December 20, 1989.

#### II.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.); *accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.,* 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984).

Recently, the Supreme Court of the United States took the opportunity to address Rule 56. In two cases decided on the same day, the Court expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

After *Celotex,* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. *See also Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate "with or without supporting affidavits" the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552, *quoting* Fed.R.Civ.P. 56. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. Furthermore, in *Anderson,* the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In addition, the Court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing

---

**1.** Actually, the deposition of this plaintiff was taken in *Wolf v. Napier* S2–146–85 a *civil* case between these parties dealing with the same issues in the Tippecanoe Circuit Court. The case in that court ended when summary judgment was granted in favor of Napier against Wolf.

the standard of proof relevant to that case or issue. *Id.* at 254–55, 106 S.Ct. at 2513. For recent academic insight into *Celotex* and *Anderson,* see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183 (1987). The article states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgments, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

*Id.* at 194. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33. A recent object lesson applying these ideas is found in *Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988). *See also Jamison–Bey v. Thieret,* 867 F.2d 1046 (7th Cir.1989). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?,* 63 Notre Dame L.Rev. 770 (1988).

It is not disputed that the defendant James Napier is a Deputy Sheriff employed by Tippecanoe County, Indiana. He is also a participant in the Arson Task Force, which is an arson investigation team drawn from local law enforcement and fire fighting agencies, and appointed by the prosecuting attorney for Tippecanoe County, Indiana. The principal function of the plaintiff as a member of the Arson Task Force was to conduct interviews where arson was suspected, and to assist in the physical investigation of fires. Apparently, there are no written policies or practices regarding the duties of the Arson Task Force from the prosecuting attorney for Tippecanoe County, Indiana, or from any other source.

It is also undisputed that on October 25, 1982, there was a fire at the home of the plaintiff, Richard A. Wolf, which is located in Tippecanoe County, Indiana. As a result of that fire, damage was sustained to his residence and personal property. Among the items which were reported as lost in the fire were two Remington shotguns, a half case of shotgun ammunition, and an AR–15 rifle. There is a considerable amount of information in the record with reference to the claimed losses of the aforesaid firearms and ammunition.

The defendant and other members of the Arson Task Force were physically present at the scene of the fire on October 25, 1982, and returned to that scene for several days thereafter. The focus of the investigation centered on the inception site of the fire. During the three days immediately following October 25, 1982, the plaintiff met with other members of the Arson Task Force to discuss possible theories for the cause of the fire. Such meetings were standard practice following the completion of the physical investigation of a fire.

The defendant as a member of this Arson Task Force concluded that this was a "set fire" and ruled out the possibility of accidental cause. The defendant based his determination upon a finding that the fire had two points of origin within the house. Apparently, this conclusion was agreed to by other investigating members of the Arson Task Force. Several physical documents were created as a result of this investigation. The last of these, and the most important, was an Affidavit of Probable Cause dated September 21, 1983, which the court will refer to at a later time. There were also Supplementary House Fire Reports dated October 25 and October 28, 1982.

Chief Pendleton of Wea Township Fire Department apparently had suggested an alternative explanation for the two points of origin. It appears that this defendant examined Chief Pendleton's explanation and rejected it. The defendant submitted his final report to the office of the prosecuting attorney for Tippecanoe County, Indiana. That report did not single out any individual as responsible for setting the fire.

Three days after the fire on October 28, 1982, the defendant contacted Tom Watrous, who is an adjuster for Cincinnati In-

surance Company, the insurance carrier on the residence. The defendant informed Mr. Watrous that it was his determination that this fire was a "set fire." It appears that it was standard operating procedure for the Arson Task Force investigators to contact the adjuster of the insurance company and inform him of the status of any pending investigation. On or about December 3, 1982, the plaintiff's claim for loss was paid by the Cincinnati Insurance Company.

Early in the year 1983, the defendant participated in a grand jury sitting in Tippecanoe County, Indiana, which was investigating this fire. Tom Watrous testified before that grand jury that the Remington shotguns, the AR–15, and the half case of ammunition were included in the plaintiff's insurance claim. On January 19, 1983, the grand jury issued three indictments naming the plaintiff, Richard A. Wolf, as a defendant. Two counts of that indictment charged arson, and one count charged perjury, both under the criminal law of the State of Indiana. The perjury indictment concerned the plaintiff's alleged false reporting of the loss of the guns and ammunition.

The criminal charges went through the normal procedures in the Tippecanoe Circuit Court in Lafayette, Indiana, under their Cause No. C–4887. On January 28, 1983, this plaintiff as a defendant in the aforesaid criminal proceedings filed in the Tippecanoe Circuit Court a motion to dismiss, which among other things argued that the grand jury's indictment was without probable cause. Judge Warren B. Thompson of the Tippecanoe Circuit Court denied that motion on June 8, 1983.

At a later time, September 23, 1983, at the instance of the prosecutor serving Tippecanoe County, Indiana, an Affidavit of Probable Cause was prepared by that prosecutor's office and signed by this defendant which accompanied a criminal information of theft relating to the insurance proceeds, and an information of perjury filed against this plaintiff in the Tippecanoe Circuit Court. For immediate reference, the Affidavit of Probable Cause is attached hereto, marked "Appendix A", and by ref-

erence incorporated herein. This plaintiff was prosecuted for arson, theft, and perjury in the Tippecanoe Circuit Court. A jury subsequently acquitted this plaintiff on all five counts, above referred to, on May 30, 1984.

The basic thrust of this plaintiff's amended complaint, which was filed September 2, 1987, is that this defendant's investigation of the aforesaid fire, and his reporting of the results thereof, were maliciously intended to harm the plaintiff, his property, and his reputation. It should be emphasized that the amended complaint in this case purports to state claims under 42 U.S.C. § 1983, and invokes this court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

The plaintiff alleges that the defendant, Napier, deliberately limited the scope of the investigation to the facts supporting an arson theory; disregarded competent evidence in contradiction of an arson theory; engaged in conspiratorial conduct with other investigators to implicate the plaintiff as an arsonist; suggested the likelihood of arson and insurance fraud to the insurance adjuster knowing that this suggestion was false; and signed the Probable Cause Affidavit and criminal information knowing that they were false. The plaintiff also grounds claims for damages on the Fifth and Fourteenth Amendments of the Constitution of the United States regarding the cost of defending the criminal trial and the loss of income because of the injury to his reputation in the community.

It is necessary to set forth a number of basics that are embodied in decisions of the Supreme Court of the United States during the last two decades.

### III.

■ With regard to the claim for loss of reputation, the same is foreclosed by *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), and later explained in this circuit in *Bone v. City of Lafayette*, 763 F.2d 295 (7th Cir.1985). The facts of this case do not fit neatly into the factual setting of *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136 (7th Cir.1984), but

same remains relevant authority. To the extent that this plaintiff is attempting to recover money for damages to reputation from these two defendants under § 1983, *Paul v. Davis*, and its progeny clearly foreclose the same.

The second Supreme Court case that must be cited and discussed is *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), a part of which emanated from this district, and all of which emanated from this circuit. The opinion by Justice Stevens precluded damage claims under § 1983 on the basis of allegations that a police officer gave false testimony before a grand jury. The immunity established in *Briscoe v. LaHue* is for the purpose of protecting those who give testimony in criminal cases from later damage claims being filed under § 1983. *See also Auriemma v. Montgomery*, 860 F.2d 273 (7th Cir.1988) (municipal attorney not entitled to absolute immunity with respect to extrajudicial investigation); *Kompare v. Stein*, 801 F.2d 883 (7th Cir.1986) (county coroner entitled to qualified immunity from claim that she failed to disclose exculpatory evidence); *Holdeman v. Consolidated Rail Corp.*, 649 F.Supp. 1188 (N.D.Ind.1986), *aff'd* 840 F.2d 20 (7th Cir.1988) (mere furnishing of information by a private party to a law enforcement official, even if the information is false, not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983).

█ Certainly, the facts of *Briscoe v. LaHue* would specifically foreclose the collection of any money damages under § 1983 for testimony given by this defendant before the grand jury that returned the aforesaid criminal indictments. About that there can be little doubt.

█ It might be a slightly closer case to determine whether or not money damages could be secured against a police officer who allegedly put false statements in an Affidavit of Probable Cause. The argument of the plaintiff is on the periphery of the issue, and has more to do with the failure to investigate completely and an underlying bias and prejudice of the defen-

dant regarding the preparation thereof. Before the issue is resolved as to the Affidavit of Probable Cause, it is necessary to cite yet another Supreme Court immunity case, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The basic purpose of the decision in *Imbler v. Pachtman*, was spelled out more clearly ten years later in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In *Malley v. Briggs*, the Supreme Court of the United States rejected an attempt to draw an analogy between an officer requesting a warrant, and a prosecutor requesting a grand jury to indict a suspect. In doing so, the Supreme Court thoroughly discussed the basic purposes of *Imbler v. Pachtman*, as granting absolute immunity to functions "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995. The court went on to express its concerns for the officer applying for a warrant, which admittedly is a vital part of the criminal justice system but is further removed from the judicial phase of the criminal proceedings than that of a prosecutor seeking an indictment from a grand jury. With regard to the officer seeking a warrant, the Supreme Court came down on the side of qualified rather than absolute immunity.

The facts of this case do not fit neatly into either those of *Imbler v. Pachtman* or *Malley v. Briggs*. This defendant is not a lawyer, is not an elected prosecuting attorney, or the designated lawyer deputy of an elected prosecuting attorney. Neither is this defendant at the outer edges of the criminal justice procedural system in simply seeking a warrant under the Fourth Amendment for either a search or an arrest. Rather, this defendant is much closer to the actual prosecutorial decision than that discussed in *Malley v. Briggs*. Here this defendant, a police officer involved legitimately in the investigation of a fire to determine whether charges for Arson should be brought, submitted a report to the authorized prosecuting official, and that official prepared an Affidavit of Probable Cause which this officer, defendant here, signed. It is a closer question, but it

is this court's conclusion that those facts fit under the absolute immunity of *Imbler v. Pachtman,* rather than the qualified immunity of *Malley v. Briggs.*

In the deposition of this defendant taken July 23, 1987, counsel for the plaintiff goes to great lengths to question the defendant as to the truthfulness of his grand jury and criminal trial testimony. Any claim based on the truthfulness of either is clearly foreclosed by *Briscoe.*

### IV.

However, even assuming that this function of preparing and filing an Affidavit for Probable Cause, which is at the heart of the prosecutorial decisional process, invokes the qualified immunity reasoning of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), this court must turn to the Seventh Circuit's *en banc* decision in *Rakovich v. Wade,* 850 F.2d 1180, 1199, n. 13 (7th Cir.1988). With the exception of Judges Cudahy and Ripple, all of the present members of the court of appeals agreed that a district court must determine the issue of qualified immunity under *Harlow v. Fitzgerald* as a matter of law, and should do so prior to a decision on the merits. This court will attempt to walk through the necessary conceptual ingredients required under *Harlow v. Fitzgerald,* as mandated by *Rakovich v. Wade.*

Under the substantive criminal law of the State of Indiana, the filing of an indictment by a grand jury generally satisfies the probable cause requirements. *See State ex rel. French v. Hendricks Superior Court,* 252 Ind. 213, 247 N.E.2d 519 (1969); *State v. Palmer,* 496 N.E.2d 1337, 1339 n. 6 (Ind.App. 4 Dist.1986).

In the concluding paragraph of *Schertz v. Waupaca County,* 875 F.2d 578 (7th Cir.1989), Judge Pell stated in part:

> The existence of probable cause bars a Section 1983 action based on false arrest or imprisonment, regardless of the motives of the arresting officers. Schertz's arguments do not challenge the sufficiency of the evidence or the officers' truthfulness in applying for a warrant, but rather concern the defendants' alleged intent to harm him. Since intent is not a material issue, the defendants were entitled to summary judgment. Even had Schertz raised an issue with respect to probable cause, he has not sufficiently defined the claimed constitutional violation to overcome the defense of qualified immunity.

*Id.* at 584.

This court is well aware that Tippecanoe County as a municipal corporation does not enjoy the benefit of qualified immunity in reference to damages actions under 42 U.S.C. § 1983. The Supreme Court clearly so ruled in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). *See also Hedge v. County of Tippecanoe,* 890 F.2d 4 (7th Cir.1989).

In *Wilson v. Civil Town of Clayton,* 839 F.2d 375 (7th Cir.1988), Judge Cummings stated:

> Like that of the Civil Town of Clayton, the initial inquiry in determining the susceptibility of the County of Hendricks (the "County") to a suit is under *Monell* [*v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611] (1978), not *Parratt* [*v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)]. The complaint fails to allege any actions by the County. It also fails to allege any actions by the County Commissioners. It does allege actions by the County Sheriffs, but none that can be attributed to the County as "official policy." Under the allegations of the complaint, liability of the County could only be premised on the theory of *respondeat superior* for the actions of the County Sheriffs and *Monell* expressly precludes such suits. *Monell,* 436 U.S. at 691 [98 S.Ct. at 2036].... The dismissal of the cause of action against the County is therefore affirmed.

*Id.* at 383.

With regard to the Deputy Sheriffs in *Wilson,* Judge Cummings also stated:

> As with the prior defendants, the Deputy Sheriffs of the County of Hendricks (the "Sheriffs") were sued in both their personal and official capacities and the district court dismissed both claims on the basis of *Parratt. Parratt* is inapplicable to the suit against the Sheriffs in

their official capacities but is applicable to the suit against them in their personal capacities.

First, to the extent the Sheriffs were sued in their official capacities the claim is one against the County itself. *See* [*Kentucky v.*] *Graham*, 473 U.S. [159] 165 [105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985)].....; *see also supra* at 382. Because the complaint fails to state a § 1983 federal cause of action against the County, this permutation also fails to state a claim. The dismissal of the complaint against the Sheriffs in their official capacities was proper.

To the extent the Sheriffs were sued in their personal capacities, *Parratt* applies and requires dismissal of the federal claim. The complaint states facts sufficient to allege that the Sheriffs deprived Wilson of his property without due process, but fails to state facts sufficient to allege that their actions were anything but "random and unauthorized." *Parratt* therefore applied and because the ITCA provides an adequate post-deprivation remedy, the requirements of due process are satisfied. Accordingly, the dismissal of the § 1983 claim against the Sheriffs in their personal capacities was correct.

*Wilson*, 839 F.2d at 384.

It has also been decided that the burden is on the plaintiff to allege and prove that the defendant was deliberately indifferent with reference to the violation of established constitutional rights. Negligence is not sufficient.

## V.

In the plaintiff's brief filed on December 20, 1989, opposing defendant's summary judgment motion, there appears to be an argument advanced that this plaintiff had some vaguely defined constitutional right with regard to this arson investigation that created some species of affirmative constitutional duty, apparently under the Fourteenth Amendment, that was violated in some way by the manner in which this defendant and Tippecanoe County, Indiana, conducted the investigation. Although borne in a different factual context, the decision of Chief Justice Rehnquist in

*DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), is worthy of consideration. In that case, it was held that the State of Wisconsin's failure to provide a minor petitioner with adequate protection against his father's violence did not violate that minor's rights under the substantive component of the due process clause of the Fourteenth Amendment. Among the several items that were decided in that case was the elimination of any negligence standard that might be relevant. The Court reaffirmed *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Here, Tippecanoe County, Indiana, and its deputy sheriff, were not constitutionally mandated to conduct a professionally perfect arson investigation. There was probable cause based on the affidavit signed by this defendant, which was prepared by the prosecuting attorney after receiving relevant information from this defendant. This defendant, in turn, signed the affidavit prepared by the prosecutor, and the matter went forward through the process of a grand jury indictment and a jury trial in accord with the Sixth Amendment of the Constitution of the United States. A substantial array of this plaintiff's constitutional rights was protected. It is elementary that not every person who is charged with criminal conduct and acquitted by a jury is per se entitled to damages for a violation of constitutional rights under Title 42 U.S.C. § 1983.

Under the substantive common law of Indiana, there is a tort commonly known as malicious prosecution. Under the law of Indiana, malicious prosecution is an action commenced and carried on maliciously, and without probable cause. The essential elements of a cause of action for a malicious prosecution are (1) the prosecution of some legal proceedings, by, or at the instigation of a defendant, (2) the absence of probable cause to do so, (3) malice in instituting the proceedings, (4) the termination of such proceedings in plaintiff's favor, and (5) damages sustained by such plaintiff. *See Duckwall v. Davis*, 194 Ind. 670, 142 N.E.

113 (1924). *See also Board of Commissioners of Hendricks County v. King*, 481 N.E.2d 1327 (Ind.App. 1 Dist.1985). Although there is a substantial overlap between the relief that may be available to a person acquitted who can make out a case for malicious prosecution under the law of Indiana, and the relief that is available to such a person under § 1983, the overlap is not total and complete. As indicated, one of the critical elements of a claim for malicious prosecution under the law of Indiana is prosecuting without probable cause. This court has determined that under the decisions relating to this subject under § 1983, there was, as a matter of law, probable cause for the prosecutor to go forward with this prosecution, and that the affidavit of this defendant stated probable cause on its face. Under the law of Indiana, there must be both malice and want of probable cause.

As a general proposition, probable cause should be examined in the light of the circumstances that were known at the time that the Affidavit for Probable Cause was filed. *See Holdeman v. Consolidated Rail Corp.*, 649 F.Supp. 1188 (N.D.Ind.1986), aff'd 840 F.2d 20 (7th Cir.1988).[2]

The case of *Gramenos v. Jewell Companies, Inc.*, 797 F.2d 432 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987), is a good example, along with *Holdeman*, of where there can be probable cause for an arrest or for the filing of criminal charges, even though there is a later determination that the person charged is found not guilty. Part IV of Judge Easterbrook's *Gramenos* opinion, beginning at page 437, presents a comprehensive analysis of probable cause in the procedural context of 42 U.S.C. § 1983 and the Fourth Amendment.

▪ In this regard, this court has also considered a number of decisions made by the court of appeals in this circuit that predates the *en banc* decision in *Rakovich v. Wade*. *See BeVier v. Hucal*, 806 F.2d 123 (7th Cir.1986). In *BeVier* Judge Cummings, speaking for the court, stated at page 126 that "[p]olice officers may arrest

without a warrant, if the information available to the officer at the time of the arrest indicates that the arrestee has committed a crime. Thus, an arrest is not unconstitutional merely because the information relied upon by the officer later turns out to be wrong." *See also Hensley v. Carey*, 818 F.2d 646 (7th Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987); *Patton v. Przybylski*, 822 F.2d 697 (7th Cir.1987); *Schertz v. Waupaca County*, 875 F.2d 578 (7th Cir.1989); *Wilson v. Civil Town of Clayton*, 839 F.2d 375 (7th Cir.1988). In *Schertz*, Judge Pell stated:

Schertz argues that probable cause is always a jury issue because it involves a question of reasonableness. *See Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987). While Section 1983 claims presenting the question of probable cause are generally inappropriate for disposition on summary judgment, this is true only where there is room for a difference of opinion. *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir.1985). Schertz has presented nothing to undermine the state court's determination of probable cause.

In any event, even if Schertz had raised a factual issue with respect to probable cause, the defendants would be entitled to summary judgment on the basis of qualified immunity. *See id.* at 1569 (immunity a question of law appropriate for resolution on summary judgment). Officials performing discretionary functions are entitled to qualified immunity from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] ... (1982). In order to be deemed "clearly established," the right must be specifically defined:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.... In light of pre-existing law the unlawfulness must be apparent.

---

**2.** This conclusion as to the existence of probable cause is well supported by the sworn testimony

of this defendant in his deposition taken July 23, 1987.

*Anderson v. Creighton,* 483 U.S. 635 [107 S.Ct. 3034, 97 L.Ed.2d 523] ... (1987); *Rakovich v. Wade,* 850 F.2d 1180, 1208–09 (7th Cir.), *cert. denied* [488 U.S. 968], 109 S.Ct. 497 [102 L.Ed.2d 534] ... (1988); *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir.1987). It is not sufficient to allege the violation of a broad constitutional right, such as the right to be free from unreasonable seizures; "if the test ... were to be applied at this level of generality, it would bear no relationship to ... 'objective legal reasonableness'." *Anderson,* [483 U.S. at 639, 107 S.Ct. at 3039]. Rather, the plaintiff must demonstrate that a reasonable official, confronted with the specific facts at issue and the law in effect at the time, would have known that his conduct violated the plaintiff's constitutional rights. *Id.; Green v. Carlson,* 826 F.2d 647, 651 (7th Cir.1987).

*Schertz,* 875 F.2d at 582–83.

Also of some moment is the decision in *Barts v. Joyner,* 865 F.2d 1187 (11th Cir. 1989), in which it was held that police officers who commit an unlawful arrest cannot be held liable in civil rights actions for damages resulting from a jury trial, conviction, and incarceration that occur as a result of the independent decisions of prosecutors, judges, and juries. Judge Edmondson there relied primarily on *Malley v. Briggs.*

Given the information that was stated in the affidavit of a defendant, and the reports of the defendant prior thereto, this court rules as a matter of law that this defendant had probable cause to submit all of the information to the prosecuting attorney serving Tippecanoe County, Indiana, who in turn, had the prosecutorial discretion to determine that there was probable cause to prosecute this plaintiff, even if this defendant is not entitled to the absolute protection of *Imbler v. Pachtman* and *Briscoe v. LaHue.* This court determines that this defendant is entitled to the immunity protection outlined in *Malley v. Briggs, Harlow v. Fitzgerald,* and *Rakovich v. Wade.*

Another issue must be considered by reference to another Supreme Court decision, *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Certainly, that decision overruled a significant point in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Municipalities and other local governmental units are considered "persons" for purposes of 42 U.S.C. § 1983. Such local units of government can be sued under § 1983 for constitutional torts committed by their agents. However, such lawsuits must be brought directly against the municipality since *Monell* reemphasizes that respondeat superior is an insufficient theory upon which to base a claim for municipal liability. Specifically, *Monell* asserted that a "municipality cannot be held liable *solely* because it employs a tort feasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036 (emphasis in original). Municipal liability attaches when the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. Only when a municipal "policy" or "custom" is the catalyst for a constitutional deprivation can a municipality be held responsible. A plaintiff must establish that he or she was injured by official misconduct or wrongdoing perpetrated pursuant to an officially sanctioned policy, custom or practice that causally links the municipality to the alleged wrongdoing and injury. *See Mendez v. Rutherford,* 687 F.Supp. 412 (N.D.Ill.1988).[3]

The court must also attempt to find a way to deal with the issue of a single incident under or between the decisions of the Supreme Court of the United States in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), and *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). When one takes a close look at the factual setting in *Pembaur* regarding a physician, the conduct of the assistant

---

**3.** This court does not understand this plaintiff to be making an argument against Tippecanoe

prosecutor in Cincinnati, Ohio—in telling the deputy sheriffs, who were in the process of serving employees at the clinic of a doctor who was under indictment, to "go in and get" the aforesaid employees—was vastly more egregious than anything that is charged by this plaintiff against the defendant in this case. This assumes that the opinion by Justice Brennan in *Pembaur* is given its full blown effect, and that the various concurring opinions which eat at it around the edges are of no significance. The facts of this case simply do not fit with *Pembaur*, but do come within the teaching of *City of Oklahoma City v. Tuttle*. To the extent this complaint may state tort claims under the substantive law of Indiana for either false arrest or malicious prosecution, those claims are DISMISSED WITHOUT PREJUDICE under the specific authority of *Gramenos v. Jewell Companies*. Because there are no viable federal constitutional claims remaining in this case, all of the federal claims are now DISMISSED. The court elects to treat the defendants' pendent state law claims under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The clerk shall enter judgment on the federal constitutional claims in favor of the defendants and against the plaintiff. Costs assessed against plaintiff. The present trial date of January 16, 1990, is cancelled. IT IS SO ORDERED.

### APPENDIX A

### IN THE CIRCUIT COURT OF TIPPECANOE COUNTY

State of Indiana

County of Tippecanoe

State of Indiana

vs

Richard Wolf

Cause No. C–4953

#### AFFIDAVIT OF PROBABLE CAUSE

Sept. 23, 1983

Your Affiant, being first duly sworn, deposes and says that on January 12, 1983,

she was the Office Manager for the Tippecanoe County Prosecutor's Office.

Your Affiant, in addition, on said date was acting as the Reporter for the Grand Jury of Tippecanoe Circuit Court for the First Quarter of 1983. In her capacity as such, your Affiant was present for all said Grand Jury proceedings. Further your Affiant has exercised control of the tape recordings of said proceedings. Your Affiant has reviewed the testimony of Richard Wolf given to said Grand Jury on January 12, 1983. In said testimony, Richard Wolf stated that "I testified against him in a Special Grand Jury ...", referring to Detective Sergeant James Napier of the Tippecanoe County Police Department, said statement having been given after the Foreman of said Grand Jury had placed Richard Wolf under oath and affirmation.

Further your Affiant sayeth not.

/s/ Maureen K. Coomey
        Affiant

Subscribed and sworn to before me this 22nd day of September, 1983.

MY COMMISSION EXPIRES:

August 5, 1987

/s/ Kathryn E. Greer
        Notary Public
        Resident of Tippecanoe County
        Printed Name:
        Kathryn E. Greer

---

County for failure to train under *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The narrow scope of that concept, based on deliberate indifference, is of no aid to this plaintiff here.