Shawn Michael JONES, a minor by his Father and next friend, Terry D. JONES, and Terry D. Jones, Plaintiffs–Appellants,

v.

Charles WEBB, individually, Defendant–Appellee.

No. 94–1270.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 28, 1994.

Decided Jan. 11, 1995.

Robert S. Wilson, Sycamore, IL (argued), for plaintiffs-appellants.

Nancy G. Lischer (argued), Hinshaw & Culbertson, Chicago, IL, Thomas H. Riley, Jr., David J. Kurlinkus, Clayton L. Lindsey, Hinshaw & Culbertson, Ruth E. Robinson, Querrey & Harrow, Limited, Rockford, IL, for defendant-appellee.

Before EASTERBROOK, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Shawn Jones maintains that Charles Webb, the Ashton, Illinois police chief, violated his civil rights when Webb allegedly arrested Jones without probable cause and applied excessive force during that arrest. The district court granted Webb's motion for summary judgment, finding that he had probable cause to make the arrest and that Webb was qualifiedly immune from the excessive force claim. We affirm.

## I. BACKGROUND [1]

The incident giving rise to Jones' complaint occurred in the town of Ashton, Illinois, which is home to approximately 1,000 people. On June 14, 1992, Webb and his wife were driving through town in their unmarked, personal automobile when the police dispatcher called to report that a young male and female had been seen fighting on the front lawn of the town's funeral home. Webb had passed the funeral home just minutes before and had seen no one, but he drove back to that location upon receiving the dispatcher's call. There, he observed on the sidewalk behind the funeral home a twelve-year-old boy who he later learned was Shawn Jones. The boy was the only person in the area, and as Webb's car approached, he turned around and began to walk east on the sidewalk running beside the funeral home. Webb turned his vehicle around, pulled over to the curb, and asked the boy to come over. As Webb was getting out of his car, however, the boy began to scream and took off running. At that point, Webb had not yet identified himself as Ashton's chief of police.

Apparently frightened by Webb, the boy ran to a nearby residence. Without stopping to knock or to ring the doorbell, he opened both a screen door and an inner, wooden door and ran inside. Webb followed the boy into the home, where they both encountered a startled resident. Webb explained to the boy that he was the chief of police, but the boy responded, "No you ain't." The homeowner knew Webb and affirmed for the boy that Webb indeed was the police chief. Jones apparently was not convinced, although he could not explain later the reason for his skepticism.

Webb then told the boy to calm down and that he only wanted to talk to him. Yet the boy continued to attempt to push both Webb and the homeowner away. The boy appeared to Webb to be frightened and confused, and he was fighting, kicking, and screaming. As he struggled, Jones told both Webb and the homeowner that he was not going to be taken anywhere by a stranger.

---

1. Because we are reviewing a disposition on summary judgment, we describe the facts in the light most favorable to Jones. Unless otherwise noted, the facts described are undisputed.

At some point, the homeowner asked Webb to remove the boy from his residence.

When it became clear that the boy was not going to calm down and leave the residence voluntarily, Webb placed one arm around the boy's neck and grabbed the boy's left arm with his other hand. He then lifted the boy off the ground and carried him out of the house. Prior to this, Webb had not touched the boy in any way. Jones later testified that he was not in any physical pain as he was being carried from the home, as Webb neither twisted Jones' arm nor attempted to choke him.

Once outside the two front doors, the boy grabbed the handrail attached to the front steps and attempted to hold on. To loosen his grip, Webb slapped the boy's hand once with an open hand. Webb indicated that by this time, a volunteer fireman had arrived and that the fireman assisted in removing Jones' hand from the handrail, although Jones did not recall that anyone else was present. Once he had freed Jones from the handrail, Webb set the boy down on the ground, where Jones continued to struggle. Webb then gave the boy a "small shove" in the back that was "like a push." Jones explained later that Webb was "directing" him face first into the ground. Webb placed the boy's hands behind his back and eventually handcuffed him. However, Jones still struggled to free himself, prompting both Webb and the volunteer fireman to hold him down. Jones maintains that in the course of this struggle, Webb placed a knee in his back.

Jones had been handcuffed for only a short time when his father arrived. Webb then removed the handcuffs and released the boy. Jones was never charged with any offense relating to this incident.

Jones and his father filed this action in the district court, alleging under 42 U.S.C. § 1983 that Webb had falsely arrested the younger Jones and that the officer had used excessive force in the course of that arrest. Jones also alleged state law claims for false imprisonment and assault and battery. Webb moved for summary judgment on the federal claims, arguing that he had probable cause to arrest the boy and that he was qualifiedly immune from the excessive force claim. The district court agreed, entering judgment in Webb's favor on the federal claims and declining to exercise supplemental jurisdiction over the state law claims.

## II. DISCUSSION

### A.

▆ The district court found that the arrest was not unlawful because Webb had probable cause to make an arrest once the boy had fled, had barged uninvited into a private residence, and had continued to struggle to free himself both before and after he was carried outside. Jones argues that the district court failed to account for the fact that Webb had initiated this encounter when, without first identifying himself as a police officer, he attempted to question such a young boy while emerging in civilian clothes from a private automobile, and while in the company of a woman who also did not appear to be a law enforcement official. Jones argues that any young boy would have reacted as he did when approached on the street by a complete stranger and that Webb therefore did not have probable cause to follow him and eventually to arrest him. We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to Jones and according him the benefit of all reasonable inferences. *See Simmons v. Pryor,* 26 F.3d 650, 653 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 461 (1994).

▆ A necessary predicate to any unlawful arrest claim under section 1983 is the absence of probable cause. *Id.* at 654; *Biddle v. Martin,* 992 F.2d 673, 678 (7th Cir. 1993). A law enforcement officer has probable cause to make an arrest when "the facts and circumstances within [his] knowledge and of which [he has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *see also Hunter v. Bryant,* 502 U.S. 224, 228–29, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). This is necessarily a fact-intensive inquiry

that does not lend itself to definitive legal rules. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir.1993). Whether an officer had probable cause to make an arrest generally will present a question for the jury, although the court can decide it when the material facts are not disputed. *Maxwell,* 998 F.2d at 434; *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Probable cause can be found as a matter of law, however, only when the facts permit but one conclusion—that is, "only when no reasonable jury could find that the officer[ ] did not have probable cause" to make an arrest. *Maxwell,* 998 F.2d at 434.

■■■ The district court correctly considered the information available to Webb by the time he grabbed Jones by the neck and arm, lifted and then carried him from the residence, directed him to the ground, and then cuffed him, as it was only at this point that there was an arrest or other seizure that would implicate the Fourth Amendment. "Only when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968); *see also Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989); *Tom v. Voida,* 963 F.2d 952, 956 (7th Cir.1992). Webb's attempt to call the boy over to his vehicle in order to ask him some questions did not amount to a seizure under the Fourth Amendment because Jones was completely free to leave and in fact did leave

this encounter. *Tom,* 963 F.2d at 956; *see also Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).[2] The fact that Webb proceeded to chase Jones into the private residence also did not effect a seizure, because the liberty of a fleeing suspect is not restrained "until his freedom of movement has been terminated by an intentional application of physical force or by the suspect's submission to the asserted authority." *Kernats v. O'Sullivan,* 35 F.3d 1171, 1178 n. 4 (7th Cir.1994); *see also California v. Hodari D,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991); *Tom,* 963 F.2d at 957.

■■■ As a result, Jones only was "seized" for Fourth Amendment purposes once Webb restrained his movement within the residence and then forcibly removed him at the homeowner's request. Webb concedes that a seizure and perhaps even an arrest occurred at this point,[3] but he argues, and the district court found, that he then had probable cause to believe that the boy had committed or was committing an offense. *See Hunter,* 502 U.S. at 228–29, 112 S.Ct. at 537. By the time Webb physically restrained Jones and attempted to remove him from the private residence, Webb knew: (1) that he had observed Jones in the area where a fight had recently been reported, (2) that Jones was the only person in that area as his car had passed, (3) that Jones had fled screaming when Webb attempted to speak to him, (4) that Jones had entered a private residence uninvited, opening two closed doors in the process, (5) that Jones had startled the homeowner, who asked Webb to remove the boy, and (6) that Jones would not calm down

---

**2.** Moreover, because Webb simply called out to the boy to determine whether the boy would be willing to answer his questions, probable cause or even reasonable suspicion was not yet required. *Tom,* 963 F.2d at 957; *see also United States v. Johnson,* 910 F.2d 1506, 1508 (7th Cir. 1990), *cert. denied,* 498 U.S. 1051, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991); *United States v. Cardona–Rivera,* 904 F.2d 1149, 1153 (7th Cir.1990) ("Police can accost and ask to speak with a person without any grounds at all.").

**3.** It is unnecessary for us to decide whether Jones actually was arrested or whether he was subjected only to an investigative *Terry* stop. The district court observed that both Webb and Jones

"seem to agree" that there was an arrest, yet the court itself believed that the degree of restraint applied could fairly be characterized as an "investigatory stop." (R. 46 at 12–13 n. 8.) *See United States v. Smith,* 3 F.3d 1088, 1094–95 (7th Cir.1993) (use of handcuffs does not automatically turn investigative stop into an arrest), *cert. denied,* —— U.S. ——, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994). Because in our view, Webb had probable cause to make an arrest, he necessarily had the reasonable suspicion required to conduct an investigatory stop. *See, e.g., United States v. Wilson,* 2 F.3d 226, 229 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1615, 128 L.Ed.2d 341 (1994).

and continued to struggle even after both Webb and the homeowner had told the boy that Webb was the chief of police. Furthermore, as Webb carried him from the home, the boy continued to struggle and even grabbed the handrail on the steps outside. The boy did not cease his struggle even after the officer directed him to the ground and held him there. The information known to Webb was therefore sufficient to warrant a prudent officer in believing either that Jones had been involved in the reported fight at the funeral home or that he was then committing a criminal trespass on the homeowner's property.[4] *See Tom,* 963 F.2d at 959–60. Regardless of how frightened the boy may have been and regardless of why he had not believed that Webb was the chief of police, the Constitution would not require the officer to permit the youth to remain in a private home where he did not belong and where he was not wanted. Because the restraint on Jones' liberty was thus supported by probable cause, Jones is absolutely barred from maintaining an unlawful arrest claim under section 1983. *See Simmons,* 26 F.3d at 654; *Schertz,* 875 F.2d at 582.

### B.

■ Jones next maintains that Webb used excessive force in lifting him by the neck and arm, carrying him from the residence, slapping his hand to loosen it from the handrail, and, after directing him to the ground outside the residence, placing a knee in his back and applying handcuffs. The district court found that Webb was entitled to qualified immunity from this claim because no reasonable officer would have believed that the force applied was unconstitutionally excessive. A law enforcement officer's entitlement to qualified immunity presents a question of law, which we review de novo. *Rice v. Burks,* 999 F.2d 1172, 1174 (7th Cir. 1993).

■ Excessive force claims relating to an arrest or other seizure must be analyzed under the Fourth Amendment's objective reasonableness standard. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871; *Ellis v. Wynalda,* 999 F.2d 243, 246 (7th Cir.1993). We ask "whether the officer['s] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872; *see also McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir.1992). Factors relevant to this inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. We must allow for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. at 1872; *see also Plakas v. Drinski,* 19 F.3d 1143, 1149 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994).

■ Webb maintains that he is entitled to qualified immunity because the force he applied was not unreasonable in light of established legal principles. *See Elder v. Holloway,* —— U.S. ——, ——, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Rice,* 999 F.2d at 1174. To determine whether immunity attaches, we must consider whether " 'a reasonable officer could have believed that [his] conduct was constitutional in light of the clearly established law and the information [the officer] possessed at the time the incident occurred.' " *Ellis,* 999 F.2d at 246 (quoting *McDonald,* 966 F.2d at 293 (additional citation omitted)); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). "Although it is not necessary that a prior case address the precise factual situation confronting the officer, the unlawfulness of the officer's action should be clear in light of pre-existing law." *Estate of Starks v. Enyart,* 5 F.3d 230, 233 (7th Cir.1993); *see also*

---

4. Under Illinois law, "[a] person commits the offense of criminal trespass to a residence when, without authority, he knowingly enters or remains within any residence, including a house trailer." 720 ILCS 5/19–4 (1994).

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Ultimately, we are concerned with " 'whether the law is clear in relation to the specific facts confronting the [officer] when he acted.' " *McDonald,* 966 F.2d at 294 (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)); *see also Ellis,* 999 F.2d at 246.

■ It of course was clearly established in June 1992 that a police officer's use of excessive force during an investigatory stop or in the course of an arrest would violate the Fourth Amendment. *See Ellis,* 999 F.2d at 246. Our inquiry here, however, requires a higher level of specificity. *See Rice,* 999 F.2d at 1174; *Maxwell,* 998 F.2d at 435. We must ask, as the district court did,

> whether a reasonable officer would have believed that holding [Jones] by the arm and neck and carrying him out of the house, freeing his hand from the handrail, placing him on the ground, and handcuffing him was excessive in light of the fact [that Jones] had run screaming from [the officer], had entered a house without permission (the owner of which asked [the officer] to remove [him] ), had continued to resist [the officer's] efforts to remove him from the house (even after being informed [that Webb] was the chief of police), had fought, kicked and screamed and had continued to struggle as he was being removed from the house and upon being placed on the ground.

(R. 46, at 8–9.)

We have no difficulty finding that a reasonable officer in Webb's position would have believed that the force applied was justified in light of existing law. The undisputed facts show that Webb utilized physical force to remove Jones from the private residence (where the boy had no right to be) only once the homeowner asked that the boy be removed and it became clear that the boy would not leave of his own volition. Before any force was utilized, Jones had been told both by Webb and by the homeowner that Webb was the chief of police. Moreover, as Webb was carrying Jones from the residence, the boy continued to struggle, and he ultimately grabbed onto the handrail on the

front steps, prompting Webb to attempt to loosen the boy's grip by striking it once with his open hand. Even after Webb succeeded in moving the boy outside and onto the front lawn, Jones admits that he was still attempting to free himself, which caused the police chief to direct the boy to the ground, to at some point put his knee in the boy's back, and ultimately to handcuff the youth so that he could do no harm to Webb, to the volunteer fireman, or to himself. We agree that in these circumstances, a reasonable police officer certainly could have believed that the limited force applied was proper and was not unconstitutionally excessive in light of clearly established law. Jones has directed us to no closely analogous case that would have notified Webb that such actions would violate the Fourth Amendment, and we have been unable to find one ourselves. *See Elder,* ―― U.S. at ――, 114 S.Ct. at 1021 (court reviewing qualified immunity judgment must use its full knowledge of relevant precedents). Moreover, the limited force applied here was not "so plainly excessive" that Webb should have known, even in the absence of a closely analogous case, that he was violating Jones' constitutional rights. *See Rice,* 999 F.2d at 1174 (plaintiff can evade application of qualified immunity without identifying closely analogous case if force plainly excessive); *see also Kernats,* 35 F.3d at 1181 (police conduct "not such an elementary violation of the Fourth Amendment that the absence of a precisely analogous case is of no moment"). Webb is therefore qualifiedly immune from Jones' claim that he used excessive force in violation of the Fourth Amendment.

Affirmed.