114 F.3d 1192
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Wesley SMITH, Plaintiff-Appellant,
v.
Rick J. LANG, Respondent-Appellee.
 No. 96-1951.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 7, 1997.*
Decided May 7, 1997.
Rehearing Denied June 16, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 
 ORDER
 
 1
 A jury acquitted Wesley Smith of drug-dealing charges pending against him in Hendricks County, Indiana. At trial, Smith's sole defense was that he was entrapped.[1] He brought this action under 42 U.S.C. § 1983 against police officer Rick Lang for entrapping him and arresting him without probable cause. The district court granted Lang's motion for summary judgment. We review the district court's summary judgment de novo. Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir.1996), cert. denied, 117 S.Ct. 952 (1997); Jones v. Webb, 45 F.3d 178, 181 (7th Cir.1995). Because Smith has not demonstrated a genuine issue of material fact to be resolved at trial, and because Lang is entitled to a judgment as a matter of law, see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), we affirm.
 
 
 2
 Mark Stroud became a confidential informant for the Indiana State Police to avoid prosecution for selling cocaine. Officer Lang pressured him to make controlled purchases from suspected drug dealers after Stroud failed to provide any useful information. Stroud told Lang that Smith had previously purchased drugs from him for personal use but not for distribution. Subsequently--apparently after Lang prodded Stroud for more results--Stroud suggested that he might be able to purchase drugs from Smith. Stroud twice wore a wire while going to Smith's home to attempt a purchase, but on neither occasion did Smith have any drugs to sell to Stroud. While monitoring one of these visits, however, Lang learned that Smith (or his wife) planned to contact Stroud as soon as they obtained drugs for resale. Meanwhile, upon further encouragement from Lang, Stroud asked Smith (and he agreed) to be the middle-man in several drug transactions in Hendricks and Morgan Counties. Lang subsequently swore a probable cause affidavit for Smith's arrest for drug dealing based on the Hendricks County transactions.
 
 
 3
 Following his acquittal on the Hendricks County charges,[2] Smith filed suit against Lang under § 1983, alleging that Lang deprived him of due process by coercing Stroud to lure him into criminal activity, to destroy evidence of the inducement, and to testify falsely at Smith's trial. Smith further alleged that Lang deprived him of his Fourth Amendment rights by not disclosing at Smith's probable cause hearing that Stroud had been unsuccessful in two attempts to "set up" Smith, and that Stroud had told Lang that Smith was not a seller. (R. at 521, 562.)[3]
 
 
 4
 To survive summary judgment, Smith must demonstrate a material issue of fact (or that Lang is not entitled to judgment as a matter of law) on the issue of whether Lang deprived him of his constitutional rights. See Celotex, 477 U.S. at 322-23. With respect to Smith's due process claim, the district court found Lang entitled to summary judgment noting that "a complaint of entrapment does not state a cause of action under § 1983." (R. at 562, 564.) We review this decision de novo and conclude that Lang is entitled to summary judgment.
 
 
 5
 In United States v. Russell, 411 U.S. 423, 431-32 (1973), the Supreme Court identified due process as a possible theory available to a defendant to redress governmental entrapment. Id. The Court limited relief, however, to instances where the law enforcement conduct violates "fundamental fairness, shocking to the universal sense of justice." Id. Notably, this circuit has interpreted Russell as presenting "an extremely narrow opportunity ... to challenge government conduct." United States v. Davis, 15 F.3d 1393, 1415 (7th Cir.), cert. denied, 513 U.S. 896 (1994). Because § 1983 does not provide for relief for ordinary violations of state law, a cause of action exists only where the state law violation is so extreme that it rises to the level of a due process violation, such as when the state law violation "create[s] a serious risk of convicting an innocent person." See Eaglin v. Welborn, 57 F.3d 496, 501 (7th Cir.) (en banc), cert. denied, 516 U.S. 965, 116 S.Ct. 421 (1995) (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)). In Eaglin, this court explained that violations of state entrapment laws do not necessarily create such a risk because the defense of entrapment is an "excuse for, not a denial of, crime," and thus "does not bear on innocence." Id.
 
 
 6
 In the present case, Smith argues that Lang violated his due process rights by coercing Stroud to entrap Smith, to destroy evidence proving the entrapment, and to testify falsely against Smith. In support of his motion for summary judgment, Lang submitted an affidavit stating that 1) Stroud informed him that Smith was a known drug dealer and that Stroud might be able to purchase drugs from Smith, 2) that Lang learned (by wiring Stroud) that Smith (or his wife) planned to contact Stroud "when they had drugs available for sale," and 3) that Lang arranged the controlled buys only after Smith "contacted [Stroud]" and revealed that he "now had marijuana to sell." (R. at 530.) In addition, Lang averred that he did not tell Stroud to testify falsely against Smith, and that he first learned--after the completion of Smith's Hendricks County criminal trial--that Stroud may have misrepresented certain facts regarding Smith's involvement in the drug trade. Id. Smith did not counter Lang's affidavit.[4] In support of his due process claim, Smith pointed only to the success of his entrapment defense at the Hendricks County trial. He did not attempt to demonstrate that Lang's conduct was so outrageous as to rise to a violation of due process, for instance, by creating the risk of convicting an innocent person. See Eaglin, 57 F.3d at 501. Hence, Lang is entitled to judgment as a matter of law on Smith's § 1983 claim based on an alleged violation of due process. See Himba v. Odegaard, 769 F.2d 1147, 1167 (7th Cir.1985) (noting that deputy sheriffs' potential liability for violating defendant's constitutional rights by framing him for crimes they committed arose solely under state law, not under § 1983); Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir.1967) (per curiam) (stating that "[w]hile entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation").
 
 
 7
 Smith also alleged that Lang violated the Fourth Amendment by applying for an arrest warrant without revealing that his probable cause affidavit was tainted by his own entrapment of Smith.[5] Although Smith's § 1983 claim is properly rooted in the Fourth Amendment, see Albright v. Oliver, 510 U.S. 266, 271 (1994) (holding that plaintiff's § 1983 claim implicated Fourth Amendment where plaintiff, who was never convicted or incarcerated, alleged officer deprived him of liberty by arresting him without probable cause) (plurality opinion), it is completely barred by the existence of probable cause. See Booker, 94 F.3d at 1057; Jones, 45 F.3d at 181; Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir.1993) (stating that probable cause is an absolute bar to defendant's § 1983 liability for unlawful arrest, false imprisonment, or malicious prosecution), cert. denied, 511 U.S. 1082 (1994). Probable cause to arrest is not necessarily negated by a defendant's successful assertion at trial of an entrapment defense. See Simmons, 26 F.3d at 654. The Fourth Amendment requires that a police officer making an arrest (or relying on an arrest warrant) have knowledge of reasonably trustworthy facts and circumstances sufficient to persuade a prudent person that the suspect committed or was committing an offense. See Malley v. Briggs, 475 U.S. 335, 345 (1986) (holding that an arrest warrant will not shield a police officer from liability for false arrest if "a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant"); Booker, 94 F.3d at 1057; Jones, 45 F.3d at 181. Although probable cause is normally a jury question, it can be found as a matter of law "when no reasonable jury could find that the officer[ ] did not have probable cause." Jones, 45 F.3d at 182.
 
 
 8
 Smith does not dispute that the evidence presented by Lang at the probable cause hearing (based on information obtained through Stroud) sufficiently demonstrated his involvement in the drug trade. Rather, Smith contends that Lang acted unreasonably in relying on the arrest warrant that was secured on the basis of his probable cause affidavit because Lang's affidavit failed to mention Stroud's statement that Smith was not a seller or the two failed attempts to "set up" Smith. Lang submits that he was reasonable in applying for and relying on the arrest warrant because the omissions were immaterial. Moreover, as previously noted, Lang averred that he applied for and relied on the arrest warrant only after being apprised of Smith's drug-dealer reputation and of Smith's agreement to be the middle-man in a "deal" arranged by Stroud. (R. at 539, Lang Aff.). Smith's submissions in response to Lang's affidavit, see supra n. 4, do not demonstrate the existence of a material issue concerning Lang's reasonableness in applying for and relying on the arrest warrant. Stroud's affidavit merely confirms his role as a confidential informant and further describes the context of the transactions leading to Smith's arrest. And even if Stroud's affidavit confirms that Lang pressured him for results, it does not counter Lang's affidavit that Stroud arranged the controlled purchases only after Smith revealed his interest in obtaining drugs for resale. Thus, we do not see how Stroud's earlier remarks that Smith was not a dealer and that Smith refused to deal on other occasions undermine Lang's reasonableness in applying for and relying on the arrest warrant on this occasion. Indeed, no reasonable jury could find that Lang did not have probable cause.[6]
 
 
 9
 We further reject Smith's attempt to demonstrate a material issue by pointing to this court's opinion in Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988) (noting that neither a prosecutor's decision to charge, a grand jury's decision to indict, nor a prosecutor's decision not to drop charges will shield a police office from civil liability "who deliberately supplied misleading information that influenced the decision"). See also Albright, 510 U.S. at 279 (stating that the Fourth Amendment may be violated in a case in which an officer gives misleading testimony at a preliminary hearing and that testimony "served to maintain and reinforce the unlawful haling in of [the defendant] into court") (Ginsburg, J., concurring). Although Jones upheld § 1983 liability where police officers violated the Fourth Amendment by deliberately supplying incomplete and misleading information to the prosecution, Jones, 856 F.2d at 994, the facts there are--as noted by the district court--very dissimilar to those presented here. Unlike in Jones, the evidence Lang "withheld" was neither exculpatory, nor the type of information that would certainly have convinced the prosecution to drop the charges against Smith.[7] As previously noted, Stroud's comments that "Smith was not a seller" and had refused to sell on a few prior occasions do not clearly undermine the evidence also provided to Lang demonstrating Smith's willingness to sell. Hence, because Lang was reasonable in applying for and relying on an arrest warrant for Smith based on the information he provided in his probable cause affidavit, Smith's Fourth Amendment claims are necessarily barred. Accordingly, we AFFIRM the judgment of the district court granting Lang's motion for summary judgment against Smith's § 1983 claims.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Smith submitted a juror's affidavit stating that the jury believed Smith was entrapped. (R. at 538, Reynolds Aff.)
 
 
 [2]
 Smith was subsequently tried in Morgan County for his drug sales there. Although his original conviction in Morgan County was reversed on appeal, Smith v. State of Indiana, 565 N.E.2d 1059 (1991), he was convicted upon re-trial, and that conviction was affirmed on appeal, Smith v. State of Indiana, No. 55AO1-9601-CR-2 (Ind.S.Ct. Aug. 20, 1996). The district court found that this Morgan County conviction does not bar Smith's suit, see Heck v. Humphrey, 512 U.S. 477 (1994), because Smith's § 1983 claims relate only to Lang's conduct in procuring Smith's Hendricks County arrest. (R. at 507). Even if we consider the arrests to be so intertwined that Heck does apply, his Morgan County conviction does not bar Smith's Fourth Amendment claims because an illegal arrest does not undermine the legality of the conviction. See Heck, 512 U.S. at 487 n. 7; Simpson v. Rowan, 73 F.3d 134, 136 (7th Cir.1995), cert. denied, 117 S.Ct. 104 (1996)
 
 
 [3]
 In his Response to the District Court's Order to Clarify his Contentions, Smith alleged that Officer Lang deprived him of his Fourth Amendment right to be arrested upon a warrant based on probable cause, and of his Fifth and Fourteenth Amendment rights not to be deprived of liberty without due process of law. (R. at 521.) Because Lang acted under color of state rather than federal law, Smith's due process claims implicate the Fourteenth rather than the Fifth Amendment. See Bivens v. Six Unknown Named Federal Bureau of Narcotics Agents, 403 U.S. 388, 392 (1971). Moreover, although Smith also pleaded a Sixth Amendment claim, he waived this argument by not raising it on appeal. See Johnson v. Duneland Sch. Corp., 92 F.3d 554, 557 (7th Cir.1996)
 
 
 [4]
 In opposition to Lang's motion, Smith submitted several documents, including: (1) copies of the jury verdict forms acquitting him in the Hendricks County trial; (2) a newspaper article noting his acquittal based on entrapment; (3) a juror's affidavit; (4) uncertified copies of Stroud's deposition testimony stating that he believed Lang set up Smith and that Lang told him not to testify regarding the failed attempts to purchase drugs from Smith; and (5) uncertified copies of excerpts from testimony from his Hendricks County and Morgan County criminal trials. (R. at 538.) The first three items do not contradict Lang's affidavit, and the latter two uncertified submissions may not be used to support Smith's argument. See Fed.R.Civ.P. 56(e) (providing that opposing affidavits shall set forth facts as would be admissible in evidence; supporting papers shall be sworn or certified). Smith also submitted Stroud's affidavit confirming that he wore a wire to Smith's house to allow Lang to obtain incriminating evidence regarding Smith's drug activity, and that he "set up" drug transactions with Smith
 
 
 [5]
 According to the district court, "Smith assert[ed] that Lang's probable cause affidavit, which resulted in his arrest, was incomplete, thus depriving the court of the opportunity to make an informed decision of probable cause." (R. at 562, 564.)
 
 
 [6]
 Because Lang did not learn of Stroud's alleged perjury until after Smith's Hendricks County trial, his reasonableness in applying for and relying on the arrest warrant remains intact. Maltby v. Winston, 36 F.3d 548, 557 (7th Cir.1994) (noting that evidence discovered after arrest is not relevant to inquiry into probable cause for arrest), cert. denied, 115 S.Ct. 2576 (1995)
 
 
 [7]
 In Jones, the police officers failed to inform the prosecution about information contained in "street files" that could have exculpated the defendant. Id. at 988-89. In addition, the police submitted a report to the grand jury that contained numerous falsehoods and excluded any mention of the exculpatory evidence. Id. at 990. Moreover, the police department failed to alert prosecutors when one of the officers involved in the murder investigation wrote a report that indicated that they arrested the wrong person. Id