**Anna BROOKS, Plaintiff,**

v.

**SEVIER COUNTY, Sevier County Sheriff's Department, and Mark Schults, Defendants.**

**No. 3:02–CV–375.**

United States District Court, E.D. Tennessee, at Knoxville.

June 24, 2003.

A. Philip Lomonaco, Knoxville, TN, for Plaintiff.

Dean B. Farmer, Keith L. Edmiston, Hodges, Doughty & Carson, Knoxville, TN, for Defendant.

### MEMORANDUM OPINION

VARLAN, District Judge.

Plaintiff Anna Brooks alleges a violation of her civil rights pursuant to 42 U.S.C. § 1983 for the use of excessive force by defendant Mark Schults, a Deputy with the Sevier County Sheriff's Department. Specifically, Brooks claims that Schults used excessive force in violation of her rights under the Fourth Amendment[1] in

---

1. The Fourth Amendment states as follows: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly de-

arresting her at the home of her fiancé, Steven Wood, in Sevier County, Tennessee, on June 16, 2001. Brooks seeks damages for the physical and mental injuries she claims to have suffered as a result of Schults' actions. Brooks also alleges that defendant Sevier County is liable for Schults' negligent conduct under the Tennessee Governmental Tort Liability Act, Tenn.Code Ann. § 29–20–205.[2]

This matter is presently before the Court on the following motions: (1) Motion by Defendants for Summary Judgment [Doc. 13]; (2) Motion to Stay Discovery Pending Resolution of Defendants' Motion for Summary Judgment Addressing the Issue of Qualified Immunity [Doc. 16]; and (3) plaintiff's Motion to Amend the Complaint [Doc. 18]. The motions have been thoroughly briefed by the parties [*see* Docs. 14, 15, 17, 19, 23, 24, 25, 26, and 29][3] and will be addressed *seriatim.*

## I. *Defendants' Motion for Summary Judgment*

### A. *Factual Background*

As the Court is obliged to do in reviewing a motion for summary judgment, the facts of this case will be viewed in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

On the evening of June 16, 2001, Brooks was at the home of her fiancé, Steven Wood, where they were engaged in a discussion about their current living arrangements. Brooks began to suffer an anxiety attack, a condition for which she has been prescribed medication. Brooks describes the anxiety attack of that evening as feeling "panicky, shortness of breath." [Doc.15, Brooks Dep. at p. 19.] Apparently, Brooks' inability to catch her breath alarmed Wood and he called 911 to request an ambulance. Angela Lewelling and Eric Farmer of the Sevier County Ambulance Service responded to the call, as well as Deputy Schults and Deputy Gary Kent who were summoned for an "ambulance assist with possibly a domestic disturbance." [*Id.,* Schults Dep. at 11.]

Schults arrived on the scene first, followed shortly by Kent and the paramedics. Schults found Brooks outside the rear of the home. What happened next is the subject of dispute and, of course, the crux of the case. Brooks claims that Lewelling grabbed her by the arm and tried to pull her up. Brooks claims she then shrugged her shoulder away from Lewelling, at which point Schults pointed his finger in her face and instructed her to cooperate.

---

scribing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV.

**2.** The Sevier County Sheriff's Department is also named as a defendant in this case. Plaintiff moved to amend her complaint [Doc. 10] to clarify that Sevier County was the proper governmental entity to be sued and not the Sevier County Sheriff's Department. As per plaintiff's motion, the Amended Complaint does not contain a request for relief against the Sheriff's Department, although it is the subject of some of the negligence allegations. *See* Doc. 12. Because plaintiff agrees that the Sheriff's Department is not a proper party, all allegations against the Sheriff's De-

partment will be **DISMISSED** with prejudice, as set forth in the accompanying order.

**3.** In ruling on the pending motions, the Court has thoroughly reviewed and carefully considered the parties' pleadings, deposition excerpts, exhibits and affidavits, with one exception. In support of plaintiff's response to defendants' motion for summary judgment, Brooks has submitted what appears to be an unofficial transcript of a deposition of a Dr. Regan, along with an audiocassette recording of Dr. Regan's deposition. [Doc. 19.] The Court will not consider such evidence as it does not comply with the requirements of Fed.R.Civ.P. 56(e). *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir.1993).

Brooks says she turned her head away and put her hand up to push Schults' finger out from under her nose. Brooks claims Schults then threw her on the ground and when she tried to stand up, he threw her on the ground again and jumped on her back with his knees and told her she was "going to f—ing jail." [Doc. 19, Brooks Dep. at 41.] She was then handcuffed behind her back at which point she did not try to further resist.

Schults describes the sequence of events differently. [Doc. 15, Schults Dep. at 23–28.] He testified that Brooks smacked Lewelling's flashlight away and cursed at the paramedics. Schults then advised Brooks that she needed "to let these people look at you" and was gesturing with his hands when Brooks smacked at his face and hit him in the left hand. At that point, Schults advised Brooks that she was under arrest and tried to stand her up. When she would not stand up, he rolled her onto her stomach to handcuff her. Schults testified that he had one hand on her back and Brooks was kicking her legs and feet. Schults testified that he did not put his knee in her back, although he is willing to concede this point for the purposes of summary judgment. [*See* Doc.14, at 3, n. 3.]

The other witnesses to this event, Wood, Lewelling, Kent, and Farmer, offer varying degrees of corroborating testimony to Brooks' version and to Schults' version of events. It is, however, undisputed that Brooks was charged with disorderly conduct and resisting arrest and that those charges were dismissed by the Sevier County General Sessions Court on September 4, 2001.

## B. *Standard of Review*

Under Fed.R.Civ.P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Burchett v. Kiefer,* 310 F.3d 937, 942 (6th Cir.2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

## C. *Analysis*

Defendants' motion for summary judgment asserts three (3) bases: first, that Schults is entitled to the defense of qualified immunity; second, that Schults is not

liable in his official capacity; and third, that Sevier County cannot be liable for negligence under the Governmental Tort Liability Act. As to the second basis for defendants' motion, Brooks concedes that to establish liability against Schults in his official capacity, she would have to establish a custom or policy of Sevier County that led to Schults' allegedly unconstitutional conduct. *See Monell v. Department of Social Services of City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Brooks has waived this claim by declining to present evidence of any municipal liability [Doc. 19 at p. 13]. Accordingly, the Court will **GRANT** defendants' motion as to any claim against Sevier County under 42 U.S.C. § 1983 or against Schults in his official capacity.

### 1. *The Issue of Qualified Immunity*

With respect to the claim against Schults in his individual capacity and the issue of qualified immunity, the Court finds that there are genuine issues of material fact which preclude the entry of summary judgment. Qualified immunity is an affirmative defense available to government officials for discretionary acts that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Claims of qualified immunity are assessed on a fact-specific basis to ascertain whether the particular conduct of the defendant police officer infringed on a clearly established federal right of the plaintiff, and whether an objective, reasonable officer would have believed that his conduct was lawful under extant federal law. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Supreme Court delineated a two-part analysis for assessing whether a governmental official should be protected by qualified immunity in *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, the court must consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201, 121 S.Ct. 2151. If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. *Id.* This part of the inquiry, the Supreme Court has instructed, is "whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151. It is clear that Brooks' allegations make out a colorable claim of constitutional violation, that is, the use of excessive force in the course of an arrest. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The second part of the qualified immunity analysis, however, is where defendants' motion fails. The question becomes, viewing the facts in the light most favorable to Brooks, whether Schults used excessive force in arresting Brooks or whether the amount of force used was reasonable under the circumstances. The question of the reasonableness of Schults' actions turns on the differing versions of events offered by the parties. "Although the application of qualified immunity comprises a legal issue, *summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." Painter v. Robertson,* 185 F.3d 557, 567 (6th Cir.1999) (emphasis added) (citing *Johnson v. Jones,* 515 U.S. 304, 313–15, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

The parties dispute many of the key facts surrounding Brooks' arrest. Specifically, Brooks has presented direct

evidence through her testimony which contradicts the account of events provided by Schults. Did Brooks swing at Lewelling or did she merely shrug her shoulder? Did Brooks then swing at Schults or did she simply put her hand in front of her face? Was Brooks kicking and fighting? Did Schults jump on her back with his knees?[4] These are all questions more appropriately answered by a jury with the opportunity to assess the veracity and credibility of the witnesses. If Brooks' version of events is to be believed, then a jury may conclude that Schults acted unreasonably and used excessive force in arresting her. If Schults' version of events is to be believed, then a jury may conclude that he acted reasonably under the circumstances and there was no violation of Brooks' civil rights. For purposes of a summary judgment motion, Brooks' account and all reasonable inferences drawn therefrom must be accepted as true. Thus, the Court cannot hold, as a matter of law, that Brooks' account is implausible and grant summary judgment where the issue of credibility is determinative of the case at hand. *See Saucier v. Katz*, 533 U.S. 194, 216, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (Souter, J., concurring) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, *Graham* will not permit summary judgment in favor of the defendant official. And that is as it should be.") (referring to *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104

L.Ed.2d 443 (1989)). Therefore, defendants' motion for summary judgment on the issue of qualified immunity is **DENIED.**

### 2. *The Governmental Tort Liability Claim*

The final question for resolution on defendants' motion for summary judgment is Brooks' claim of negligence. As the Court interprets the Amended Complaint, Brooks seeks damages from Sevier County under the Tennessee Governmental Tort Liability Act ("GTLA") for Schults' negligence. [Doc. 12, ¶¶ 142–157, and p. 14.] The Amended Complaint alleges that Schults' actions, as described therein, constitute negligence and that the Sheriff's Department is therefore liable for such negligence.[5] *Id.* The type of conduct alleged to be negligent, however, is the type of conduct that one normally associates with intentional torts. Brooks alleges that Schults "negligently shoved his knee in the back of Anna Brooks causing extreme pain and suffering and ultimately Anna Brooks' back surgery." Complaint ¶ 150.

Defendants argue that Brooks cannot prove that Schults' actions were negligent, i.e., one cannot sustain a claim for negligent use of excessive force, that Sevier County has immunity for discretionary functions such as training, and that Sevier County is immune from negligent civil rights violations, if such a claim exists. [*See* Doc. 14 at pp. 15–18.] Brooks' re-

---

4. Defendants urge the Court to follow cases from other jurisdictions which address, at least in part, an officer's use of a knee in a suspect's back and whether such action constitutes excessive force. [*See* Doc. 14 at pp. 11–13, citing *Jones by Jones v. Webb*, 45 F.3d 178 (7th Cir.1995), and *Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir.2001)]. The Court cannot make such a determination in this case, however, because the question of whether Schults' use of such force was reasonable or excessive must be judged in light

of the facts with which Schults was faced at the time. The facts with which Schults was faced are in dispute.

5. The GTLA allegations of the Amended Complaint allege negligence on the part of Schults and the Sevier County Sheriff's Department. However, the prayer for relief only seeks judgment against Sevier County for the alleged violations of the GTLA. *See* note 2, *supra.*

sponse to the summary judgment motion asserts that her claim is for "violations in tort under the Governmental Tort Liability Act against Officer Schults." [Doc. 19 at p. 14.] Brooks does not address the negligent training claim in her response, nor has she presented any evidence to support such a claim, and it will therefore be considered waived. *See* L.R. 7.2.

To the extent that Brooks seeks to bring a negligence claim against Schults acting in his official capacity, such a claim is really a claim against Sevier County. Tenn.Code Ann. § 29–20–310(b). *See Claybrook v. Birchwell,* 199 F.3d 350, 355 n. 4 (6th Cir.2000) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). A claim for negligence against Sevier County is therefore a tort claim to which the Tennessee Governmental Tort Liability Act is applicable. Thus, Brooks has no independent negligence claim against Schults, and the Court's focus must be on whether Brooks can assert a claim under the GTLA.

As defendants point out, Tenn.Code Ann. § 29–20–205(2) provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . civil rights.

Subsection (2) of section 29–20–205 is generally understood to restore governmental immunity for certain intentional torts. *See e.g., Limbaugh v. Coffee Medical Center,* 59 S.W.3d 73, 79 (Tenn.2001) ("a general waiver of immunity from suit for personal injury claims is provided in section 29–20–205 . . . unless the injury arises out of one of several enumerated exceptions to this section, such as the intentional tort exception." Specifically, this exception bars claims for injuries arising out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution,

intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights.") (citing Tenn.Code Ann. § 29–20–205(2)). Thus, it is fair to interpret this section as intending civil rights claims to be considered a type of intentional tort. This understanding also comports with the case law from the Sixth Circuit which holds that more than mere negligence is required to state a claim under 42 U.S.C. § 1983. *See Yates v. City of Cleveland,* 941 F.2d 444, 447 (6th Cir.1991).

■ Defendants argue that Brooks' GTLA claim is in essence a claim for negligent violation of civil rights, a non sequitur. Defendants point to only one case which has addressed this issue, *McKenna v. City of Memphis,* 544 F.Supp. 415 (W.D.Tenn.1982), and urge this Court not to follow its reasoning. The *McKenna* court, in reviewing Tenn.Code Ann. § 29–20–205(2), noted "[t]he issue is a close one" and concluded "that Tenn.Code Ann. § 29–20–205(2) only restores municipal immunity for civil rights claims as such, not those for negligence as a matter of common law." *Id.* at 419. The *McKenna* court did not explain the distinction between a "civil rights claim as such" versus a civil rights claim arising from negligence, and it acknowledged that its decision was being made "with some trepidation." *Id.* The Court has found no case law from Tennessee courts illuminating this provision of the GTLA, and the undersigned is reluctant to determine that such a cause of action exists without such guidance. This decision is reinforced by the plain language of the GTLA and by the conclusion that Brooks' negligence allegations are really allegations of intentional tortious conduct for which Sevier County would be immune. Accordingly, the Court **GRANTS** defendants' motion for summary judgment as to

Brooks' GTLA claim and that claim is hereby dismissed.

## II. *Defendants' Motion to Stay Discovery*

Defendants moved to stay discovery until the Court ruled on the motion for summary judgment. [Doc. 16.] Defendants assert that one of the bases for the motion was the issue of whether Schults is entitled to the defense of qualified immunity, discussed *supra*. The Court notes that Defendants filed the motion to stay on March 17, 2003, shortly after the motion for summary judgment was filed on February 27, 2003. The Court's delay in ruling on this well-founded motion was a result in the transfer of this case to the undersigned. Nevertheless, given the Court's ruling denying the motion for summary judgment on the issue of qualified immunity as to Schults, Defendants' motion is **DENIED** as moot.

## III. *Plaintiff's Motion to Amend*

Plaintiff has moved to file a second amended complaint to add claims of false arrest in violation of the Fourth Amendment to the Constitution and cruel and unusual punishment in violation of Eighth Amendment to the Constitution. [Doc. 18.] Plaintiff asserts that these additional causes of action arise out of the same facts as the claims in her Amended Complaint and merely "more clearly set out the elements of damages in this case." [Doc. 29.]

Defendants oppose plaintiff's request to amend on the basis that her delay in adding new causes of action has prejudiced the defendants. [Docs. 25, 26.] Defendants note that plaintiff did not file the

motion to amend until after they had taken discovery [6] and filed a motion for summary judgment. Defendants argue that allowing plaintiff's amendment will require additional discovery and possibly another dispositive motion. Defendants argue that plaintiff's motion was filed only sixty-five (65) days before the then-trial date of June 18, 2003. As previously noted, at a status conference on May 28, 2003, the trial date was rescheduled by agreement of the parties to September 9, 2003.

 Fed.R.Civ.P. 15(a) allows a party to amend its pleadings by leave of court "and leave shall be freely given when justice so requires." Despite the liberality of amendments allowed by Rule 15(a), unreasonable delay in seeking to amend may be justification for denying the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir.), *cert. denied*, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 379 (2001); *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir.1995). One of the claims which Brooks seeks to add, a claim for false arrest, is a claim of which she was surely aware at the time of her prior amendment. The proceedings at which the criminal charges against Brooks were dismissed took place on September 4, 2001, ten (10) months prior to the initial filing of Brooks' complaint in the Sevier County Circuit Court on July 14, 2002, and well over a year prior to Brooks' first motion to amend filed on December 19, 2002 [Doc. 10]. Plaintiff was well aware of this claim long before her most recent motion to amend and the

---

**6.** Defendants' opposition to the motion to amend states that the parties have completed discovery, including the deposition of a physician in Los Angeles. [*See* Doc. 26, at p. 2.] Plaintiff responds that discovery has not been completed in this case inasmuch as she served written discovery requests to the de-

fendants on March 10, 2003. [*See* Doc. 29, at p. 1.] Those discovery requests were apparently followed shortly by defendants' motion to stay discovery. [Doc. 16.] The Court expresses no opinion on this issue, but merely points out the parties' positions for clarification.

Court questions her delay in seeking to add a claim for false arrest. Nevertheless, the Court is guided by the liberal intent of Rule 15(a) and the proposition that all cases be decided on their merits. *See Foman,* 371 U.S. at 181, 83 S.Ct. 227. Therefore, plaintiff's motion to amend to add a claim of false arrest is **GRANTED.**

■ Plaintiff also seeks to add a claim for cruel and unusual punishment under the Eighth Amendment, which defendants did not address in their opposition. Nevertheless, the Court finds that such amendment would be futile, inasmuch as plaintiff cannot sustain a claim for cruel and unusual punishment as a matter of law. It is well settled that the protections of the Eighth Amendment arise only after conviction. *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Graham v. Connor,* 490 U.S. 386, 395, n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). It is undisputed that Brooks was not convicted of the charges made by Schults and that she was held in the Sevier County Jail for only part of one night. *See* Doc. 19, Affidavit of Michael Wood. Therefore, Brooks cannot sustain a claim for cruel and unusual punishment and her motion to amend such a claim is **DENIED.**

## IV. *Conclusion*

For the foregoing reasons, the motion for summary judgment filed by defendants will be **DENIED** as to defendant Schults, **GRANTED** as to Sevier County on the claim of municipal liability, and **GRANTED** as to the Governmental Tort Liability Claim against Sevier County. Defendants' motion to stay is **DENIED** as moot. Plaintiff's motion to amend is **GRANTED** in part to add a claim of false arrest and **DENIED** in part to add a claim of cruel and unusual punishment. Further, all claims against the Sevier County Sheriff's Department are **DISMISSED** with prejudice.